2024 IL App (2d) 230099
No. 2-23-0099
Opinion filed March 20, 2024

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kendall County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 18-CF-67, 18-CF-65, 17-CF-216, |
| | ) | 17-CM-665, 17-CM-401, 17-CM-240, |
| | ) | & 17-TR-3505 |
| | ) | |
| JACOB CURREY, | ) | Honorable |
| | ) | Robert P. Pilmer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Kennedy and Mullen concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Jacob Currey, appeals the trial court's first-stage dismissal of his petition filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). He contends that summary dismissal, and the manner in which the trial court handled an amended pleading, was improper. Defendant also filed a motion under Illinois Supreme Court Rule 472(a)(3) (eff. May 17, 2019), seeking credit against his sentence for time spent confined at home while on bond, which the court denied. We agree with the trial court that defendant was not entitled to credit against his sentence; however, we agree with defendant that his postconviction petition should not

have been summarily dismissed. Thus, we affirm in part, reverse in part, and remand with directions.

¶ 2                                     I. BACKGROUND

¶ 3     As the caption indicates, defendant was charged with *multiple* separate felony, misdemeanor, and traffic offenses in Kendall County. While defendant was on bond in some of those cases, he was arrested on February 26, 2018, and charged with armed violence (for stabbing his neighbor) and possession of a stolen firearm.

¶ 4     On August 16, 2021, the parties notified the court of a fully negotiated plea agreement that would resolve defendant's pending cases. At the hearing, defendant was represented by retained counsel, attorney Brian Erwin. Pursuant to the agreement, defendant pled guilty to armed violence (case No. 18-CF-67), possession of a stolen firearm (case No. 18-CF-67), and aggravated battery of a pregnant person (case No. 17-CF-216) in exchange for a 13-year aggregate sentence. Defendant also pled guilty to multiple misdemeanor and traffic offenses (two counts of domestic battery, violation of an order of protection, and driving on a suspended license), all of which were considered satisfied by time served in presentence custody. The trial court admonished defendant of his appeal rights pursuant to Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001).

¶ 5     Two months after he pled guilty, defendant sent a letter to this court asserting that his guilty plea was involuntary. We forwarded defendant's correspondence to the trial court, which in turn treated the letter as a motion to withdraw defendant's plea and appointed counsel for him. The State filed a motion to dismiss as untimely because it was not filed within 30 days of the entry of the guilty plea, as required by Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). See *People ex rel. Alvarez v. Skryd*, 241 Ill. 2d 34, 39-41 (2011). The trial court agreed and denied defendant's motion. On the State's motion, the court modified its sentencing orders to reflect a two-year term

of mandatory supervised release (MSR), rather than a three-year term. Defendant timely appealed the denial of his motion to withdraw his plea, but the appellate defender moved to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), finding no issue of arguable merit. We agreed with appellate counsel and affirmed. *People v. Currey*, No. 2-21-0731 (2022) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 6 Meanwhile, in June 2022, defendant filed in the trial court a *pro se* motion labeled "*nunc pro tunc*," seeking presentence custody credit for time spent on home detention. (We will treat this as a motion under Rule 472(a)(3), just as the trial court did.) Then in July 2022, defendant filed a two-page, handwritten, *pro se* postconviction petition. The petition made several distinct constitutional claims, including a violation of defendant's right to a speedy trial on the armed violence charge, ineffective assistance of counsel for failure to investigate certain defenses, and ineffective assistance of counsel for failing to move to withdraw his plea. On that last point, defendant stated as follows: "In addition counsel was instructed to withdraw my plea on or about Sept 13th 21 [*sic*] and failed to do so my earlier request on Aug 30th 21 [*sic*] was ignored." The document abruptly cuts off shortly after that statement. There was also no affidavit attached to the petition or an explanation for its absence.

¶ 7 Twenty-four days later, defendant filed a motion in the trial court titled, "Motion for Appointment of Counsel," specifically for the "*attached* Petition for Post-Conviction Relief." (Emphasis added.) The first page of that filing was typed, followed by two handwritten pages of similar miscellaneous claims, including one alleging that plea counsel "failed to file withdraw [*sic*] of pleas." Attached to the petition were 15 pages of case law printed out from Westlaw followed by defendant's two-page affidavit.

¶ 8 Ninety days after defendant's original two-page pleading was docketed, the trial court issued a brief order summarily dismissing the petition. The court then issued a separate order summarily dismissing the second petition as meritless. Defendant then filed a motion to reconsider stating that his July petition was incomplete and that he did not know why only two pages of his initial petition were filed. Defendant also attached an affidavit to this motion, stating that *he* filed a *pro se* motion to withdraw his guilty plea by placing the motion in the mail at the Kendall County Jail on August 30, 2021, addressed to the circuit clerk. The motion, if docketed, would have been timely, but defendant reiterated that he did not know why it was never docketed.

¶ 9 The trial court issued a writ from custody, and defendant appeared before the court on November 1, 2022. The court and defendant held a discussion on the record, wherein defendant struggled, rather obviously, with precisely identifying his pleadings. At one point, defendant referred to both his motion to reconsider and his second petition as "a supplement brief *** for the first post [*sic*]," and the trial court cut defendant off, stating, "Well, if I've denied it"—referring to the initial postconviction petition—"it's too late to supplement it." Defendant then asked to file a notice of appeal *instanter*; the court sought to clarify that defendant "had filed two petitions" and whether he was seeking to appeal from both denials. Defendant answered that he was attempting to appeal both denials and his timely notice of appeal was filed.

¶ 10 We docketed that appeal. However, because defendant's motion for presentence custody credit was still pending, we granted the appellate defender's motion to dismiss the appeal as premature. *People v. Currey*, No. 2-22-0391 (2023) (unpublished minute order). Again, back in the trial court, in his *pro se* motion, defendant asserted that he was entitled to credit for his participation in several programs while in the county jail. Defendant then filed another motion asserting he was entitled to 481 days of credit for time spent in custody while he was on electronic

home monitoring (EHM) as a condition of bond under recent revisions to section 5-4.5-100(b) of the Unified Code of Corrections (730 ILCS 5/5-4.5-100(b) (West 2020)). The court held a hearing on the motions at which the prosecutor conceded that defendant was entitled to 560 days' credit for programming, and the court entered a modified sentencing order. However, on the issue of home detention, the court found that the credit was discretionary, not mandatory, and declined to grant it. Defendant then filed the same motion again and a motion to reconsider the denial of his postconviction petition. All of the motions were denied, and defendant timely appealed.

¶ 11                                    II. ANALYSIS

¶ 12    As noted, defendant contends that the trial court erred in summarily dismissing his postconviction petitions and denying his motion for home confinement credit. On the issue of defendant's postconviction petition, the State asserts defendant forfeited his postconviction claims because his first petition was unverified, and because he failed to show "cause" in his "second" petition for not including the claim in his first petition. The State also argues that defendant is not entitled to presentence custody credit. We review *de novo* both the petition's dismissal as well as the denial of presentence custody credit. See *People v. Garcia*, 2022 IL App (2d) 210488, ¶ 10; *People v. Donahue*, 2022 IL App (5th) 200274, ¶ 10.

¶ 13    We turn first to defendant's postconviction petition. The Act provides a means by which a defendant may challenge his conviction or sentence based on violations of federal or state constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). There is a three-stage process for the adjudication of a defendant's postconviction petition. *Id.* at 471-72. At the first stage of postconviction proceedings, the trial court has 90 days to examine the petition and may within that period summarily dismiss the petition if the court finds the allegations are frivolous and patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2020); *Pendleton*, 223 Ill. 2d at 472.

The 90-day period begins to run when the petition is filed and docketed. 725 ILCS 5/122-2.1(a) (West 2020). As our supreme court has explained, "[t]he 90-day time requirement is mandatory." *People v. Swamynathan*, 236 Ill. 2d 103, 113 (2010); see also *People v. Perez*, 2014 IL 115927, ¶ 12. If the petition is not dismissed within 90 days, it proceeds to the second stage under the Act, and counsel is appointed. 725 ILCS 5/122-2.1(b), 122-4 (West 2020).

¶ 14　There is some flexibility with when the 90-day clock begins or resets. The Act generally contemplates the filing of only one petition, but a defendant may request leave to file an amended petition or a successive one. With respect to amendments, section 122-5 provides that the trial court "may in its discretion make such order as to amendment of the petition *** as shall be appropriate, just and reasonable and as is generally provided in civil cases." *Id.* § 122-5. That section "grants the trial court discretion to allow amendments at any stage of [the] proceedings" (*People v. White*, 2013 IL App (2d) 120205, ¶ 9), and as in civil cases, when a party seeks leave to amend either a complaint or a postconviction petition "leave to do so is freely given" (*People v. Brown*, 336 Ill. App. 3d 711, 716 (2002)). "[W]hen a defendant who has filed an original post-conviction petition subsequently files an amended petition, the 90-day period in which the court must examine the defendant's petition and enter an order thereon is to be calculated from the filing of the amended petition." *People v. Watson*, 187 Ill. 2d 448, 451 (1999).

¶ 15　Here, as the State points out, defendant's initial postconviction petition was incomplete and unverified. See 725 ILCS 5/122-2 (West 2020) ("The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached"). "[T]he failure to either attach the necessary affidavits, records, or other evidence or explain their absence is fatal to [the] petition [citation] and by itself justifies *** summary dismissal." (Internal quotation marks omitted.) *People v. Delton*, 227 Ill. 2d 247, 255 (2008).

According to the State, the insufficiency of defendant's first petition required that his second petition should have been construed as a second, successive petition, which needed to meet the higher cause-and-prejudice standard (*People v. Smith*, 2014 IL 115946, ¶ 35), mostly because defendant used the word "supplement" in the petition's title. Yet the State's observation does not square with either the record or a charitable construction of *pro se* postconviction pleadings, which are reviewed " 'with a lenient eye, allowing borderline cases to proceed.' " *People v. Hodges*, 234 Ill. 2d 1, 21 (2009) (quoting *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983)); see also *People v. Harris*, 224 Ill. 2d 115, 126 (2007). Moreover, defendant's use of the word "supplement" is not dispositive, as it is the substance of a pleading, not its label, that controls its identity. See *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102 (2002).

¶ 16    As we have recently said in a case like this one, "although the record does not indicate that defendant specifically requested leave to file an amended petition, the nature of his filings makes that intent clear." *People v. Green*, 2021 IL App (2d) 200588-U, ¶ 18. Defendant's second petition was obviously an attempt to remedy the deficiencies in his first petition. Although defendant "did not submit his amended petition as part of a motion for leave to file" and instead "simply filed it" (*id.* ¶ 19), the trial court nevertheless considered *both* petitions on their merits, separately, under the first-stage rubric, *i.e.*, whether the petition was frivolous or patently without merit. That course of action indicates that the trial court, at least in part, intended to grant defendant leave to amend without formally saying so.

¶ 17    The State's characterization of the second petition as successive is further imperiled by the fact that the trial court never admonished defendant that it was recharacterizing his second *pro se* pleading as required by *People v. Shellstrom*, 216 Ill. 2d 45, 55-58 (2005), and *People v. Pearson*, 216 Ill. 2d 58, 68-69 (2005). Hence, the State cannot credibly maintain that defendant's second

petition should have been subjected to the rigors of the cause-and-prejudice test without conceding that defendant was *never* advised that was how it would be treated. We further note that at no time did the trial court or the State treat defendant's untimely 2021 motion to withdraw his guilty plea as his first postconviction petition, under which the court still "must take certain steps to [e]nsure that the defendant is admonished of the consequences of recharacterization." *Swamynathan*, 236 Ill. 2d at 106, 112.

¶ 18    Instead, the record reveals that the trial court accepted defendant's second petition as essentially a second "first" petition, which was likewise untenable. To be sure, defendant's multiple overlapping criminal cases, and defendant's multiple overlapping filings in those cases, resulted in sheer chaos from a docket entry standpoint, which did defendant no favors. Furthermore, we appreciate that the trial court did not subject defendant's second petition to the heightened cause-and-prejudice standard the State now advocates. However, as it appears the trial court implicitly granted defendant leave to amend, the better course would have been to treat *both* documents as a combined, amended filing, and evaluate that document within 90 days of the second filing. See *Watson*, 187 Ill. 2d at 451. Or, if the court was unclear on defendant's intent to amend or file a successive postconviction petition, it could have sought defendant's input and admonished him under *Shellstrom/Pearson*. But to proceed as the trial court did suggests that a defendant could file serial petitions and have each evaluated under the lower "gist" standard (*Hodges*, 234 Ill. 2d at 11, 21), and that course is inconsistent with the Act, which limits a defendant to a single petition. See 725 ILCS 5/122-1(f) (West 2020) ("Only one petition may be filed *** without leave of court.").

¶ 19    When viewed as a single amended pleading, it is clear defendant's petition should have survived summary dismissal. Defendant's petition alleged that his plea counsel was ineffective for

failing to file a motion to withdraw his guilty pleas, which was a necessary step to preserving his right to a direct appeal. For purposes of deciding whether defendant's petition is frivolous, we must take this allegation as true. *People v. Coleman*, 183 Ill. 2d 366, 380 (1998). Although the State chides defendant for failing to "establish how he was prejudiced by his plea counsel's purported failure to file a motion to withdraw his guilty plea," the State dismissively overlooks that defendant did not have to. Notwithstanding the fact that defendant pled guilty—and was entirely admonished about his pleas in open court—where a petitioner asserts in first-stage postconviction proceedings that his attorney failed to withdraw his plea and file an appeal, he need not set forth a successful basis for moving to withdraw the plea or pursue an appeal. *People v. Edwards*, 197 Ill. 2d 239, 253 (2001); see also *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) ("a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable," and the defendant "is entitled to [a new] appeal without showing that his appeal would likely have had merit" (internal quotation marks omitted)).

¶ 20 Whether defendant was *actually* entitled to have his plea withdrawn, and whether counsel's actions or inactions prejudiced him, are questions that are too complicated to be decided summarily or with only defendant's input. That is what second- and possibly third-stage postconviction proceedings are for. We therefore reverse the summary dismissal of defendant's petition and remand for a second-stage proceeding.

¶ 21 We reach a different conclusion, however, with respect to presentence custody credit for defendant's time spent confined to his parent's home on electronic monitoring, and we affirm the trial court's order denying the credit. As in the trial court, defendant has commingled and conflated two key phrases: "home detention" under section 5-4.5-100(b) of the Unified Code of Corrections (730 ILCS 5/5-4.5-100(b) (West 20202), and "home supervision" under the pretrial release

provisions of section 110-10(b)(14) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-10(b)(14) (West 2020)). The former must be credited against a defendant's sentence, while the latter bond or pretrial custody period need not be. See *Donahue*, 2022 IL App (5th) 200274, ¶¶ 10-24.

¶ 22 Here, defendant was on home *supervision* as a condition of his pretrial release, which is not required to be credited against his sentence. Defendant notes that there have been amendments to relevant sections of the Unified Code of Corrections expanding the definition of home detention credit. See Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-100(b), 5-8A-2(C), (E)). We note the amendments, too, but they do not alter our conclusion. In order to qualify for home *detention* credit, the offender must be confined to his or her place of residence "under the terms and conditions established by the supervising authority." 730 ILCS 5/5-8A-2(C) (West 2020). Nothing in the statutory definition of a " '[s]upervising authority' " embraces the conclusion that a trial court, having issued an order for bond or pretrial release, qualifies as a supervising authority, or converts an offender's pretrial release on home supervision as home detention under the Unified Code of Corrections. See *id.* § 5-8A-2(E). Defendant relies on the fact that the new amendments added the "a Chief Judge's office" to the list of entities that qualify as a supervising authority. *Id.* But we reject that argument, as pretrial offenders are under the supervision of the trial court judge handling the case and not a postjudgment program established by the chief judge of the county. See *id.* § 5-8A-9.

¶ 23 Instead, we agree with the court in *Donahue*, that the amendments notwithstanding, the throughline remains the same. Trial courts issuing pretrial release orders are *not* a "supervising authority." Thus, "the defendant was not on 'home detention' under the statute because it was the trial court *** that established the terms and conditions of his bond, including the condition of in-

home electronic monitoring" and not another entity, such as the probation department or the Department of Corrections. *Donahue*, 2022 IL App (5th) 200274, ¶ 32. "While the defendant [may have been] confined to his place of employment and his residence, the central fact was that these restrictions were conditions of his bail" as set by the trial court. *Id.* ¶ 26. We note that our holding today, as well as *Donahue*, are consistent with prior decisions holding that pretrial conditions never automatically qualify as "custody" or "confinement" for home detention sentence credit. See *People v. Ramos*, 138 Ill. 2d 152, 160 (1990) (any time spent released on bond, even time spent confined to his home, does not come under the scope of "custody" under the home detention statute); accord *People v. Beachem*, 229 Ill. 2d 237, 249-54 (2008); *People v. Stolberg*, 2014 IL App (2d) 130963, ¶¶ 49-50; *People v. Smith*, 2014 IL App (3d) 130548, ¶¶ 9-43; *People v. Gonzales*, 314 Ill. App. 3d 993, 994-96 (2000); *People v. Thompson*, 174 Ill. App. 3d 496, 499-500 (1988); see also *People v. Lotz*, 2023 IL App (2d) 220345-U, ¶¶ 14-27. Accordingly, we agree with the trial court that defendant was not entitled to mandatory home detention credit for time spent on pretrial home supervision or EHM.

¶ 24    Now, to the extent defendant was eligible to have that presentence time deemed "custodial" for presentence credit, the trial court had the discretion to deny that request, which is what it effectively did by denying the motion completely. See, *e.g.*, *Gonzales*, 314 Ill. App. 3d at 998-99. Defendant does not ask us to review the trial court's exercise of its discretion in making that determination in any way; thus, the issue is forfeited and need not be considered. See *People v. Dorsey*, 2021 IL 123010, ¶¶ 70-72.

¶ 25                                III. CONCLUSION

¶ 26    In sum, we reverse the judgment of the circuit court of Kendall County summarily dismissing defendant's combined postconviction petition and remand for a second-stage

proceeding. However, we affirm the judgment finding that defendant was not entitled to home detention credit.

¶ 27    Affirmed in part and reversed in part; cause remanded.

*People v. Currey*, 2024 IL App (2d) 230099

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kendall County, Nos. 18-CF-67, 18-CF-65, 17-CF-216, 17-CM-665, 17-CM-401, 17-CM-240, 17-TR-3505; the Hon. Robert P. Pilmer, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Jaime L. Montgomery, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Eric C. Weis, State's Attorney, of Yorkville (Patrick Delfino, Edward R. Psenicka, and John G. Barrett, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |